UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VIJAY K. TANEJA *et al.* | ) | Case No. 08-13293-SSM |
| | ) | Chapter 11 (Jointly Administered) |
| Debtors | ) | |
| | ) | |
| H. JASON GOLD, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 10-1527 |
| | ) | |
| SOVEREIGN BANK, f/k/a | ) | |
| INDEPENDENCE COMMUNITY BANK | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| H. JASON GOLD, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 10-1510 |
| | ) | |
| GATEWAY BANK, FSB | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

In these actions bought by a chapter 11 trustee to recover payments allegedly made in furtherance of a Ponzi scheme, the defendants have filed motions to dismiss the counts grounded on Virginia's fraudulent conveyance statute for failure to state a claim for relief. Together, the challenged counts seek avoidance and recovery of $47.8 million in payments made to the

1

defendants—who provided "warehouse" funding for mortgage loans originated by one of the

jointly-administered debtors—as fraudulent conveyances under § 55-80, Code of Virginia.  That

statute, however, protects "a purchaser for valuable consideration, unless it appear that he had

notice of the fraudulent intent of his immediate grantor," and the issue is whether the complaint

must make a plausible showing that the defendants had such notice, or whether lack of notice is

simply an affirmative defense.  Following oral argument, the court took the issues under

advisement.  For the reasons stated, the court concludes that notice of the transferor's fraudulent

intent is an element that must be alleged in order to state a claim for relief.

Background

On June 9, 2008, Vijay K. Taneja ("the debtor") and four companies controlled by him,

including a mortgage loan originator known as Financial Mortgage, Inc. ("FMI"), filed voluntary

petitions in this court for reorganization under chapter 11 of the Bankruptcy Code.[1]  H. Jason

Gold has been appointed as chapter 11 trustee in all five cases, which are being jointly

administered.

The trustee has alleged that mortgage loans originated by FMI, and subsequently sold

into the secondary market, lay at the heart of a massive Ponzi scheme orchestrated by Taneja.[2]

In making loans, FMI relied on lines of credit with so-called warehouse lenders like

---

[1]  The four companies were Elite Entertainment, Inc., Case No. 08-13286-SSM; Financial
Mortgage, Inc., Case No. 08-13287-SSM; NRM Investments, Inc., Case No. 08-13290-SSM; and
Taneja Center, Inc., Case No. 08-13292-SSM.

[2]  Taneja ultimately pleaded guilty to a single count of conspiracy to launder money in violation
of 18 U.S.C. § 1956(h) and was sentenced to 84 months imprisonment.  *U.S. v. Taneja*, No. 1:08-
cr-428-CMH (E.D. Va., January 30, 2009).  A statement of facts (Doc. # 5) filed in connection
with the guilty plea provides a detailed explanation of how Taneja used FMI to further his
fraudulent schemes.

Independence Community Bank and Gateway Bank.  The advances from the line of credit were expected to be repaid from the proceeds of sale when FMI sold the loan to a secondary market purchaser.  Sometimes, however, FMI sold the same loan to several different purchasers, using the proceeds from one of the sales to make the required monthly payments to the other secondary market purchasers.  On other occasions, Taneja orchestrated a succession of sham sales to straw purchasers—each purchase being financed by a loan that was then sold into the secondary market—without actually paying off earlier loans, the monthly payments of which continued to be made from the proceeds of the later loans.  By these and other fraudulent devices, Taneja was able to generate large sums of money, at least a portion of which went to finance a "Bollywood" movie.  According to the trustee, the financial house of cards could be kept intact only so long as new loans continued to be made and sold into the secondary market.

The action against Sovereign Bank (as successor to Independence), filed December 9, 2010, seeks avoidance and recovery under § 548, Bankruptcy Code, of $566,865 in payments made to it in the two years prior to the filing of FMI's bankruptcy petition (Count I) and under § 544, Bankruptcy Code and § 55-80, Code of Virginia, of $43,345,244 made to it in the five years prior to the bankruptcy filing (Count II).  Avoidance and recovery of $45,000 is separately sought under § 544, Bankruptcy Code and § 55-81, Code of Virginia (Count III).  The action against Gateway, filed December 7, 2010, seeks recovery under § 548, Bankruptcy Code, of $3,738,858 in payments made within two years of the bankruptcy filing (Count I) and under § 544, Bankruptcy Code and § 55-80, Code of Virginia, of $4,500,323 in payments made within five years of the bankruptcy filing.  The "five year" payment amounts are inclusive of the "two year" payment amounts.  As a result, $42,778,379 (or almost 99%) of the trustee's claim against

Sovereign hinges on his ability to proceed under § 55-80, Code of Virginia, while only $761,463

(or 17%) of his claim against Gateway is dependent upon the Virginia statute.

<u>Discussion</u>

I.

The Bankruptcy Code allows a trustee to avoid and recover, as a fraudulent conveyance,

payments or other transfers occurring within 2 years prior to the filing of the bankruptcy petition

that were made either with actual intent to hinder, delay, or defraud creditors, or, even in the

absence of intent to defraud, were made in exchange for less than reasonably equivalent value at

a time when the debtor was insolvent.  §§ 548(a)(1)(A) and (B), Bankruptcy Code.  In addition,

the trustee may exercise any avoidance rights that would be available to a creditor of the debtor

under state law.  § 544(b)(1), Bankruptcy Code.  The primary advantage of proceeding under

state law is that state statutes often allow a longer reach-back period than the two years available

under § 548(a).  In this connection, Virginia law permits creditors to avoid conveyances made

either with actual intent to hinder, delay, or defraud creditors or made without "consideration

deemed valuable in law or which is upon consideration of marriage."  Va. Code Ann. §§ 55-80

and 55-81.  There is no statute of limitations on an action under § 55-80 to avoid a transfer made

with actual intent to hinder, delay, or defraud creditors, and the bringing of such action is limited

only by the doctrine of laches.  *Flook v. Armentrout's Adm'r*, 100 Va. 638, 42 S.E. 686 (1902)

(suit brought ten years after conveyance was recorded); *Atkinson v. Solenberger*, 112 Va. 667, 72

S.E. 727 (1911) (suit instituted nine years after conveyance was recorded).  The statute of

limitations for an action under § 55-81 to set aside a transfer not made for valuable consideration

is five years. Va. Code Ann. § 8.01-253.

4

II.

In Count II of the complaints, the trustee is proceeding under § 55-80, Code of Virginia,

which provides as follows:

> § 55-80. **Void fraudulent acts; bona fide purchasers not affected**.  Every gift,
> conveyance, assignment or transfer of, or charge upon, any estate, real or
> personal, every suit commenced or decree, judgment or execution suffered or
> obtained and every bond or other writing given with intent to delay, hinder or
> defraud creditors, purchasers or other persons of or from what they are or may be
> lawfully entitled to shall, as to such creditors, purchasers or other persons, their
> representatives or assigns, be void. *This section shall not affect the title of a
> purchaser for valuable consideration, unless it appear that he had notice of the
> fraudulent intent of his immediate grantor or of the fraud rendering void the title
> of such grantor.*

(emphasis added).  The complaint sets out at some length facts intended to support the existence

of a Ponzi scheme and thereby invoke the so-called Ponzi presumption under which payments

made in furtherance of such a scheme are presumed to be fraudulent.  Although the complaint

includes a number of allegations that arguably support an inference that the secondary market

purchasers should have known of the fraud, it makes no allegation that either Sovereign or

Gateway had notice of Taneja's fraud or that the payments to them (other than the single $45,000

payment alleged in Count III of the Sovereign complaint) were not made for valuable

consideration.

The trustee, however, says that no such allegations are required, because the protection

the statute accords a "purchaser for valuable consideration" is in the nature of an affirmative

defense, which he is not required to negative in his complaint.  *See Goodman v. PraxAir, Inc.*,

494 F.3d 458, 466 (4th Cir. 2007) (holding that plaintiff did not need to plead facts negating an

affirmative statute of limitations defense).  The defendants, by contrast, assert that under

5

controlling Virginia law, notice of the debtor's fraud is not merely an affirmative defense, but an

essential element that the trustee must both plead and prove.

        In support of this argument, the defendants rely primarily on language from the opinion

of the Supreme Court of Virginia in *Bank of Commerce v. Rosemary and Thyme, Inc.*, 218 Va.

781, 239 S.E.2d 909 (1978).  In that case, Bank of Commerce, a creditor of Rosemary and

Thyme, Inc., brought suit under § 55-80 to avoid payments the company had made to another of

its creditors, the Peoples Bank of Virginia Beach.  *Rosemary and Thyme* at 782, 239 S.E.2d at

911.  The bill of complaint alleged that the payment was made at a time that the company was

insolvent, and was made for the specific purpose of releasing from liability the officers,

directors, and controlling shareholders who had endorsed or co-signed the promissory notes held

by the favored creditor.  *Id.* at 783, 239 S.E.2d at 911.  The chancellor sustained a demurrer and

dismissed the suit.  *Id.* at 783, 239 S.E.2d at 912.

        The Supreme Court of Virginia affirmed, holding that under Virginia law an insolvent

debtor "may generally make a valid transfer of a portion or the whole of his assets to a bona fide

creditor on account of an existing indebtedness . . . even though such transfer may be and is

intended by the debtor and creditor to give such creditor a preference to the exclusion of others

in the distribution of the debtor's assets."  *Id*. at 784, 239 S.E.2d at 912.  After extensively

analyzing the holdings in two prior cases relied on by the parties, as well as cases from other

jurisdictions, the Court concluded that the facts alleged in the bill of complaint were "insufficient

in law to support a claim to set aside the transfer."  *Id.* at 789, 239 S.E.2d at 915.  In reaching

this conclusion, the Court noted that "[i]n order to set aside a preference [as a fraudulent

conveyance], the plaintiff must not only prove that the debtor intended to delay, hinder or

defraud his other creditors, *he must also show that the preferred creditor had notice of such intent*." *Id*. at 784, 239 S.E.2d at 912 (emphasis added). The notice requirement, the Court explained, does not require proof that the creditor had "actual knowledge of the debtor-grantor's fraudulent intent," but only that the grantee had "'knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the bona fides of the transaction as would necessarily have led to the discovery of the fraud of the grantor.'" *Id.* (quoting *Crowder v. Crowder*, 125 Va. 80, 87, 99 S.E. 746, 748 (1919)). The Court did observe that when a corporation repaid a debt owed directly to one of its own directors, the "debtor-assignor and the creditor-assignee were, in effect, one person," with the result that "the fraudulent intent of the debtor *was ascribed to* the creditor, and the preference was void." *Rosemary and Thyme* at 786, 239 S.E.2d 914 (emphasis added). But when the preferred creditor "exercised no control over the insolvent corporation and . . . had no actual or constructive knowledge of the fraudulent intent of the assignor, . . . one of the *elements vital to the plaintiff's cause of action* under Code § 55-80 is lacking, i.e,, that the preferred creditor *had notice* of the debtor's fraudulent intent." *Id.* at 787, 239 S.E.2d at 914 (emphasis added).

This court agrees with the defendants that the decision in *Rosemary and Thyme* clearly establishes that notice of the debtor's fraudulent intent is not merely an affirmative defense to an action under § 55-80, Code of Virginia, but rather is an element of the plaintiff's case that must be alleged in the complaint in order to state a claim for relief.[3] *Rosemary and Thyme* itself arose

---

[3]  In the interest of full disclosure, the court acknowledges having orally ruled some months ago in a separate adversary proceeding brought by the trustee—this one against a secondary market purchaser—that the status of the defendant as a bona fide purchaser without notice of the fraud of the transferor is an affirmative defense that does not need to be negated by the plaintiff in pleading a claim under § 55-80, Code of Virginia. For the reasons stated in this opinion,

in the context of a demurrer, the effect of which, as the Court noted, was "to admit as true all

material facts which are well-pleaded." *Id*. at 783, 239 S.E.2d at 911.  The opinion not only

expressly characterizes notice of the transferor's fraud as "one of the *elements vital to the . . .*

*cause of action*," but goes on to emphasize the "*focus on the scienter* of the preferred creditor"

required by the statute. *Id.* at 787-88, 239 S.E.2d at 914 (emphasis added).  Nowhere in the

opinion is there a suggestion that the Court is articulating a special rule that applies only in the

context of a preferential payment of an otherwise valid debt.  Rather, it seems clear that a

plaintiff attacking a fraudulent conveyance under § 55-80 must always allege, as part of its cause

of action, not only the debtor's fraudulent intent in making the transfer, but the transferee's

notice of that intent.[4]  Since Count II does not do so, it fails to state a claim for relief, and the

motion to dismiss Count II will be granted, with leave to replead.

---

however, the court now believes that view to be in error.

[4]  *Banks Auto Parts, Inc. v. Banks Investments I, LC (In re Banks Auto Parts, Inc.),* 385 B.R. 142
(Bankr. E.D. Va. 2008), cited by the trustee, is not to the contrary.  The chapter 11 debtors in that
case had filed complaints that, among other relief, sought to avoid the termination of a leasehold
and a purchase option as fraudulent conveyances under both § 548(a)(1)(A), Bankruptcy Code,
and § 55-80, Code of Virginia.  In granting a motion to dismiss those claims for failure to state a
claim for relief, the court stated, "Under both § 548 of the Bankruptcy Code and § 55–80 of the
Code of Virginia, *a court looks to the intent of the grantor, not the transferee*, in determining
whether a transfer was made with the intent to hinder, delay, and defraud creditors." *Id.* at 153
(emphasis added). The opinion states that it was undisputed that the *transferor* had no fraudulent
intent, and the court rejected an argument that the fraudulent intent of the *transferee* could be
imputed to the transferor.  *Id.*  The situation here is precisely reversed.  The complaint pleads
only Taneja's fraudulent intent.  But more importantly, the quotation that the trustee has taken
from *Banks* addresses only the issue of fraudulent intent; it does not address the issue of notice.
The requisite fraudulent intent is assuredly that of the transferor (here, FMI, controlled by
Taneja); but that does not negate the *additional* requirement that the transferee (here, the
warehouse lenders) have notice of the transferor's fraudulent intent.

Separate orders consistent with this opinion will be entered in each adversary proceeding.


Date: _____       _____
                                   Stephen S. Mitchell
Alexandria, Virginia               United States Bankruptcy Judge


Copies to:

Christopher A. Jones, Esquire
Whiteford Taylor & Preston, LLP
3190 Fairview Park Drive
Suite 300
Falls Church, VA 22042
Counsel for the plaintiff

Tara L. Elgie, Esquire
Hunton & Williams, LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Counsel for defendant Sovereign Bank

James R. Schroll, Esquire
Bean, Kinney & Korman
2300 Wilson Boulevard 7th Floor
Arlington, VA 22201
Counsel for defendant Gateway Bank, FSB